IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH D. MAREK, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  06-3983 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE[1], | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

Giles, J.                                                                                                                    January 3, 2008

### I.   INTRODUCTION

Joseph D. Marek seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the final decision of Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act").  42 U.S.C. §§ 401-433.  Plaintiff filed a Motion for Summary Judgment with this court seeking reversal of the decision of the Administrative Law Judge (ALJ) and remand for the calculation of benefits.  In the alternative, Plaintiff requests that the matter be remanded for additional administrative proceedings.  Defendant filed a Response to Request for Review, arguing that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled.  For the reasons set forth below, Plaintiff's alternative motion is granted.  The matter is remanded to the Commissioner for further proceedings consistent with this

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and, pursuant to Fed. R. Civ. P. 25(d)(1), should be substituted for Linda D. McMahon as the official defendant in this matter.

Memorandum and the related Order.

## II.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 19, 2004, alleging an onset date of June 28, 2004.[2]  (R. 44-47.)  On October 15, 2004, his application was denied and he requested an administrative hearing on November 29, 2004.  (R. 35-39.)  Plaintiff, represented by counsel, testified at an administrative hearing before the ALJ on January 26, 2006.  A Vocational Expert (VE) also testified.

On March 24, 2006, the ALJ issued a ruling adverse to Plaintiff, finding that he was not disabled within the meaning of the Act and retained the ability to return to his past relevant work as a night auditor, as it is performed in the national economy, as well as the ability to perform a full range of sedentary level work.  (R. 22-23.)  Plaintiff submitted a request for review to the Appeals Council on April 6, 2006, which was denied on July 11, 2006.  (R. 6-8.)  As a result, the ALJ's determination that Plaintiff is not disabled is the final determination of the Commissioner.  Plaintiff filed his complaint in district court on September 7, 2006.

## III.  FACTUAL SUMMARY

In her testimony, the VE characterized Plaintiff's past relevant work as a night auditor as sedentary level and skilled. (R. 181.)  The VE testified that Plaintiff's past relevant work as a hotel clerk is semiskilled work that is light level but may be performed up to a medium level.  (R.

---

[2] Citations to the administrative record will be indicated by "R." followed by the page number.

181-82.)  The VE recognized Plaintiff's testimony that he performed these two jobs in an integrated manner in his prior work.  (R. 182.)

The ALJ posed a hypothetical scenario to the VE involving an individual with the following restrictions: ability to lift 20 pounds occasionally and 10 pounds frequently, walk one to two hours a day, sit six to eight hours a day, no use of feet for repetitive movement such as operating food controls or pushing and pulling, and no concentrated or excessive exposure to pulmonary irritants.  (R. 183.)  The VE testified that such an individual would be able to perform work as a night auditor as it is performed in the national economy, but not as it was previously performed by Plaintiff.  (R. 183.)  The VE further testified that there exist other jobs in substantial numbers in the national economy that an individual with such limitations could perform, including telephone survey worker, information clerk and document preparer.  (R. 184-185.)  The ALJ further inquired as to whether an additional restriction, requiring the individual to elevate his leg 45 degrees, would change the opinion about existence of jobs in substantial numbers in the national economy.  (R. 185.)  The VE opined that such an additional restriction would not change the vocational analysis.  (R 185.)

Plaintiff's counsel then posed to the VE an additional restriction to the hypothetical scenario presented by the ALJ: a requirement that the individual elevate his foot or feet to waist level or higher.  (R. 186.)  The VE testified that such a restriction would preclude even sedentary work, as the elevation requirement would interfere with a desk or countertop.  (R. 186.)

IV.   DISCUSSION

A.  Standard of Review

The role of the court upon judicial review is to determine whether substantial evidence in the administrative record supports the Commissioner's final decision.  See Stunkard v. Sec'y of Health & Human Serv., 841 F.2d 57, 59 (3d Cir. 1988).  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  See Stunkard, 841 F.2d at 59.  This court's review is not de novo, and the evidence of record will not be weighed a second time.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986), cert. denied, 482 U.S. 905 (1987).

B.  Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, a plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 416.905(a).

The Social Security Administration (SSA) has promulgated regulations establishing a five-step sequential evaluation for determining whether a claimant is disabled.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  At step one, the Commissioner must determine whether a claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b); Plummer, 186 F.3d at 428.  If so, then he is not disabled.  Id.  At step two, the Commissioner

must determine whether claimant suffers from a "severe" impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is determined not to be disabled. Id. At step three, the Commissioner must determine whether the claimant's severe medical impairment(s) meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, the claimant is disabled. Id. If the claimant's impairment(s) do not meet a listed condition, the Commissioner proceeds to step four to determine whether a claimant retains the residual functional capacity (RFC) to perform her past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant retains such capacity, she is not disabled. If not, the Commissioner proceeds to step five. At this final step, the burden of production shifts to the Commissioner to demonstrate that there are jobs existing in significant numbers in the national economy that the claimant can perform, "consistent with her medical impairments, age, education, past work experience and residual functional capacity." Plummer, 186 F.3d at 428; 20 C.F.R. § 416.920(e), (g).

C.     The ALJ's Decision

    1.     *The ALJ's sequential evaluation of Plaintiff's claim.*

The ALJ analyzed Plaintiff's claim in accordance with the sequential evaluation described above. At the second step, the ALJ determined that Plaintiff suffered from the following severe impairments: morbid obesity, edema secondary to obesity, cellulitis and venous statis ulcer, hypertension, diabetes mellitus, sleep apnea, asthma and a back disorder. (R. 19.) At the third step, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

C.F.R. §§ 404.1520(d), 404.1525 and 404.1526) (commonly referring to as "the Listings"). The ALJ determined that Plaintiff retained the RFC to perform the full range of sedentary level work, with the restriction that he be able to elevate his legs "less than 45 degrees." (R. 22-23.) At the fourth step, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a night auditor, as the work is generally performed in the national economy. (R. 22.) The ALJ continued to the fifth step, and found that there existed work in the national economy that would allow Plaintiff to work with his legs elevated below his waist underneath a desk. (R. 23.)

    2.    *The ALJ erred in failing to address the entire opinion of Plaintiff's treating physician.*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician. Upon examination of the record, the court concludes that the ALJ failed to consider the entire opinion posited by Plaintiff's treating physician and that this error requires remand.

The administrative record contains medical records from Plaintiff's treating physician, Peter B. Nonack, M.D. (R. 101-159.) These records span the period from October 28, 2002 through July 1, 2005. (R. 101-159.) In addition to the longitudinal treatment records, the record contains a "Multiple Impairment Questionnaire" dated July 1, 2005. (R. 102-109.) In this questionnaire, Dr. Nonack indicated that Plaintiff could sit for two hours and stand or walk for only one hour in an eight-hour day. (R. 104-5.) He stated that it was medically necessary for Plaintiff not to sit, stand or walk continuously in a work setting, because he must get up and move around hourly. (R. 105.) Dr. Nonack also stated that Plaintiff would need to be able to take unscheduled breaks hourly for between 10-15 minutes. (R. 108.) Next, in a certification prepared for Plaintiff's employment purposes, Dr. Nonack wrote that "Plaintiff must elevate his

legs - he is unable to sit or stand for long periods of time." (R. 148.) Finally, in a letter dated January 27, 2006, Dr. Nonack stated that Plaintiff has been advised to "elevate his legs above heart level in order to reduce the edema and prevent further infections." (R. 191.) Plaintiff testified at the administrative hearing that he had been advised by his doctor to keep his legs elevated above heart level and that he kept his legs elevated for the majority of the day. (R. 171.)

The ALJ determined that the medical evidence that she had reviewed did not support the limitations in Dr. Nonack's July 1, 2005 questionnaire responses. (R. 22.) She found that Plaintiff's testimony that he must elevate his legs above heart level "very extreme and not credible", in part, because she concluded that Dr. Nonack's records did not contain such a recommendation. (R. 22.) This conclusion was erroneous.

The ALJ's survey of the record simply failed to cite a key piece of medical evidence: Dr. Nonack's January 27th letter explaining that Plaintiff had, in fact, been medically advised to keep his legs elevated above heart level for reduction of edema and avoidance of further infections. (R. 191.) In explaining her decision not to credit Plaintiff's claim that he must raise his legs above his heart, the ALJ noted that medical records and opinions of Dr. Nonack do not indicate how long or to what degree Plaintiff must elevate his legs. (R. 22.) This is patently incorrect, as Dr. Nonack's letter unequivocally states the degree of elevation: <u>above the heart level</u>. (R. 191.)

In her brief, the Commissioner questions whether this final piece of medical evidence, found in the supplemental administrative record, was ever before the ALJ. During the administrative hearing, the ALJ stated that she would leave the record open for an additional two weeks for the submission of evidence. (R. 187-88.) The supplemental administrative record which now exists contains not only Dr. Nonack's January 27, 2006 letter, but also a letter from

Plaintiff's counsel dated January 30, 2006 enclosing Dr. Nonack's January 27th letter. (R. 190.) The court finds that Dr. Nonack's medical evidence had to have been in the ALJ's possession before the permitted supplemental record period expired.

The ALJ's failure to explicitly consider, and therefore implicitly rejecting, Dr. Nonack's opinion is inconsistent with the fundamental principle that an ALJ should give the reports of a treating physician great weight, particularly "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). The regulations explain why the well-supported opinions of a claimant's treating physician are entitled to more weight:

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). An ALJ may reject outright the opinions of a treating physician "only on the basis of contradictory medical evidence." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). When there is a conflict in the medical evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The extent to which supporting explanations are provided for a treating physician's opinions may impact the weight an ALJ accords that treating physician's opinion. Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286)). An ALJ may not reject the

treating physician's assessment due to her own "credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted).  Further, in determining a claimant's RFC, an ALJ is obligated to consider all of the evidence presented. Burnett v. Comm'r of Social Security,  220 F.3d 112, 121 (3d Cir. 2000) (citing Plummer, 186 F.3d at 429).  An ALJ must give "some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett, 220 F.3d at 121 (citing Plummer, 186 F.3d at 429; Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), r'hrg. denied, 650 F.2d 481 (3d Cir. 1981)).  Without such explanations, this court, upon review, "cannot tell if significant probative evidence was not credited or simply ignored."  Cotter, 642 F.2d at 705.

Here, since the ALJ failed to even mention Dr. Nonack's January 27th opinion, the court cannot determine whether the ALJ rejected it for a permissible reason, such as contradictory medical evidence, an impermissible reason, such as lay opinion, or refused to consider it as medical evidence.  Accordingly, this matter is remanded so that the ALJ can address Dr. Nonack's medical opinion that Plaintiff must elevate his legs above heart level for the listed reasons.

The ALJ must also readdress Plaintiff's credibility since he testified consistent with Dr. Nonack's medical directive to him.

### IV.   CONCLUSION

Having found that remand is appropriate for the foregoing reasons, the court remands the matter to the Commissioner and an appropriate order follows.